UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAWRENCE HOUSTON HOBBS,

   Plaintiff,

             Case No. 22-cv-680-pp

 v.

RUSTEN SHESKEY, KATHRINE SPARKS-SHESKEY,
FRED R. HOLZEL, REBECCA C. WILER,
CAROLYN F. HELM, TIMOTHY W. HOWELL,
STEPHANIE M. CARMAN, ANDREA LA BARGE,
MARCI TODD, MITCHELL LEVERETTE,
ELAINE GUENAGA, BRIAN AMME, ALFRED ELSER,
TREY A. MITCHELL, ANGELA K. STEVENS,
MARY HUBER-THOMPSON and JOHN/JANE DOES,

   Defendants.

---

**ORDER GRANTING DEFENDANT SHESKEY'S MOTION TO DISMISS (DKT. NO. 28); DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT (DKT. NO. 59); DENYING PLAINTIFF'S MOTION FOR RECUSAL AND TO STRIKE PLEADINGS (DKT. NO. 64); GRANTING IN PART AND DENYING AS MOOT IN PART FEDERAL DEFENDANTS' MOTION TO DISMISS (DKT. NO. 36); DENYING AS MOOT GOVERNMENT'S MOTION TO DISMISS (DKT. NO. 38); AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

---

## I. Background

On April 27, 2022, the plaintiff—who is representing himself—filed a

174-page complaint in Milwaukee County Circuit Court, naming as defendants

Kenosha police officer Rusten Sheskey;[1] fifteen current or former federal

---

[1] Defendant Sheskey notes in his motion to dismiss that his name is misspelled in the complaint; his name is spelled "Sheskey"—not "Shesky." Dkt. No. 28 at 1 n.1. The court assumes the same is true for defendant Sparks-"Sheskey," whom the complaint alleges is defendant Sheskey's wife. Dkt. No. 1-1 at 2.

1

employees: Katherine Sparks-Sheskey, Fred R. Holzel, Rebecca C. Wiler, Carolyn F. Helm, Timothy W. Howell, Stephanie M. Carman, Andrea LaBarge, Marci Todd, Mitchell Leverette, Elaine Guenaga, Brian Amme, Alfred Elser, Trey A. Mitchell, Angela K. Stevens and Mary Huber-Thompson; and unidentified John/Jane Does. Dkt. No. 1-1. In the body of the complaint, the plaintiff makes allegations against two additional current or former federal employees, Dean Gettinger and Randall Anderson, see, e.g., id. at 35, neither of whom were listed in the caption as defendants, id. at 1. Defendants Gettinger and Anderson, together with the above-listed current or former federal employee defendants (with the exception of defendant Katherine Sparks-Sheskey, who is unrepresented),[2] identify themselves as the "Federal Defendants."[3] Dkt. No. 37 at 2 n.1.

On June 10, 2022, eight of the Federal Defendants—Holzel, Carman, LaBarge, Todd, Leverette, Guenaga, Amme and Mitchell—removed the case from Milwaukee County Circuit Court to this court under the federal officer removal statute, 28 U.S.C. §1442(a)(1). Dkt. No. 1 at ¶¶ 1, 3. On July 8, 2022, the United States of America ("the government") filed a notice of substitution

---

[2] The complaint alleges that Sparks-Sheskey is "a Federal employee of the *US Department of the Interior, Bureau of Land Management . . .* employed at the Eastern States, North-Eastern States District Office, located in Milwaukee, Wisconsin." Dkt. No. 1-1 at 7.

[3] On November 18, 2022, counsel for the Federal Defendants (the United States Attorney for the Eastern District of Wisconsin) filed an amended notice of appearance, clarifying that the U.S. Attorney does not represent Sparks-Sheskey. Dkt. No. 34. No other attorney has filed a notice of appearance on Sparks-Sheskey's behalf.

under 28 U.S.C. §2679(d)(1), substituting itself as defendant in place of the sixteen Federal Defendants with respect to the plaintiff's Wisconsin law claims (counts VII, VIII, IX, X, XII, XIX, XX, XXI, XXII, XXIII and XXIV).[4] Dkt. No. 10. On June 21, 2022, the plaintiff filed a motion to remand the case back to Milwaukee County Circuit Court, dkt. no. 5, which the court denied on March 30, 2023, dkt. no. 56.

There are three pending motions to dismiss: one from defendant Sheskey seeking dismissal because he asserts that the plaintiff has not properly served him, dkt. no. 28, one from the Federal Defendants seeking to dismiss Counts I through VI, dkt. no. 36, and one from the government, seeking to dismiss Counts VII through XXV, dkt. no. 38.[5] On December 19, 2022, the court received from the plaintiff a request for an extension of time to respond to the three motions to dismiss. Dkt. No. 43. The court granted that request, giving the plaintiff a deadline of February 17, 2023 by which to respond. Dkt. No. 48.

On February 27, 2023, the court received from the plaintiff a document titled, "Plaintiff's Reply to Defendant's Motion to Dismiss Requesting an Additional Extension of Time." Dkt. No. 49. Although the court received this

---

[4] The plaintiff left "Count XIII" blank, Dkt. No. 1-1 at 158-59, and then skipped to Count XIX, omitting what would have been counts XIV through XVIII, id. So although the plaintiff's final count is labeled "XXV," the plaintiff has asserted nineteen—not twenty-five—causes of action.

[5] The United States Attorney for the Eastern District of Wisconsin represents the Federal Defendants on the plaintiff's federal constitutional claims (Counts I through VI), dkt. no. 37 at 2 n.1, and represents the government on the plaintiff's claims arising under Wisconsin statutory and constitutional law (Counts VII through XXV), dkt. no. 39 at 39.

3

document ten days after the deadline the court had imposed for the plaintiff to respond to the defendants' motions to dismiss, the court excused its tardiness. Dkt. No. 56 at 28. The plaintiff asked the court not to require him to respond to the motions to dismiss until the court had ruled on his motion to remand. Dkt. No. 49 at 1-2. Despite that request, the plaintiff included in the filing twenty-two pages of legal argument responding to the motions to dismiss. Dkt. No. 49 at 2-24. Concluding that the filing was, in essence, a response to the motions to dismiss, the court construed the filing as a brief in opposition to the motions and dismissed as moot the plaintiff's request that the court defer the deadline for him to respond to the defendants' motions to dismiss until the court had ruled on his motion to remand. Dkt. No. 56 at 28.

The plaintiff has filed two motions: a May 18, 2023 motion for entry of default against defendant Sparks-Sheskey, dkt. no. 59, and a July 5, 2023 motion for recusal and to strike the defendants' June 9, 2023 responses to his motion for entry of default, dkt. no. 64. This order addresses the five pending motions.

## II.    The Plaintiff's Allegations

The plaintiff worked for the United States Department of the Interior as a geologist beginning in April 2003. Dkt. No. 1-1 at 55. In April 2013, the plaintiff took a position with the Bureau of Land Management as the "BLM Arizona State Lead for Indian Minerals," classified as a GS-13 employee. Id. at 60-61. From 2016 to 2018, the plaintiff's permanent work location was in Nevada,

though he temporarily was stationed in Washington, D.C. from 2017 to 2018. Id. at 69, 74. In early 2018, the plaintiff relocated to Wisconsin. Id. at 37, 64.

While the allegations in the complaint are lengthy, diffuse and difficult to follow, it appears that the allegations fit into two broad categories. First, the plaintiff contends that he suffered retaliation—or "reprisals"—for engaging in "protected activities." Dkt. No. 1-1 at 70. He alleges that he reported misconduct by federal coworkers and/or supervisors—namely, "discriminatory misconduct . . . against certain Native American Entities located in Arizona," id., e.g., at 65-66—and that because he reported the misconduct, his supervisors and/or coworkers harassed him and discriminated and retaliated against him, id. at 65-70. He alleges that the retaliatory conduct began in August 2016 and continued into 2018. Id. at 68-75.

A second category of alleged misconduct concerns the plaintiff's coworkers and/or supervisors falsely accusing him of sexual misconduct while he was working in Wisconsin. Specifically, he alleges that on February 5, 2018, two of his supervisors, defendants Randall Anderson and Dean Gettinger, reprimanded him for "engagement in activities protected under Federal employment law." Dkt. No. 1-1 at 35. On the same day that Gettinger and Anderson allegedly reprimanded him, the plaintiff had a conversation with defendant Katherine Sparks-Sheskey, during which Sparks-Sheskey reported that the BLM was withholding from her "certain compensation entitlements." Id. at 35-36. The plaintiff told Sparks-Sheskey that he would investigate the matter on her behalf. Id. at 36. But the following day, his direct supervisor

5

informed him that Sparks-Sheskey had accused him of sexual misconduct. Id. at 36. The alleged sexual misconduct involved the plaintiff winking at Sparks-Sheskey during their conversation on the previous day, and an earlier incident where he allegedly touched her shoulder while holding a restaurant door open for her. Id. at 38. The plaintiff claims that "the emotional state of the country [being] at or near the apex of the '#meto[o]movement'" contributed to Sparks-Shesk[e]y's "improper allegations." Id. at 78.

The plaintiff alleges that these two categories of work-related misconduct—his reporting of misconduct and mismanagement by certain Interior employees and Sparks-Sheskey's improper sexual misconduct accusations—led to him being subjected to a "hostile work environment over a two-and-half-year period," which included poor job assignments, denial of promotions, denial of pay and benefits and other work-related harms. Dkt. No. 1-1 at 81. The plaintiff alleges that ultimately he was terminated, although his complaint does not state when. Id. at 94.

At various points in the complaint the plaintiff alleges that his coworkers at the BLM conspired with Sparks-Sheskey's husband, defendant Rusten Sheskey, to harm him. For example, he claims that Sheskey joined Sparks-Shekshey and others to defame and harass the plaintiff, that Sparks-Sheskey was "verbally hostile" to him "with the intent of malice to provoke [] altercations" and that Sparks-Sheskey submitted false testimony to further her and her husband's aims. Dkt. No. 1-1 at 41. The plaintiff claims that he was singled out for mistreatment based on his age (he is over 40), his sex (he is

6

male) and his race (he is white). Id. at 41. Portions of the complaint appear to be copied and pasted sections of documents the plaintiff says he submitted to the U.S. Equal Employment Opportunity Commission (EEOC). See, e.g., id. at 65-68.

On the same day the plaintiff filed his complaint with the Milwaukee County Circuit Court, he filed a lawsuit in this court, Hobbs v. Haaland, Case No. 22-cv-721 (E.D. Wis.). The Haaland case involves substantially similar allegations to those raised in this case. In Haaland, the plaintiff alleges that the BLM "through several of its 'employee/agents,' . . . conspired with one or more other persons[] to execute[] unlawful violations of the Plaintiffs [sic] Federal civil rights, rights to privacy, and his equal employment rights[.]"Haaland, Case No. 22-cv-721, Dkt. No. 1 at 2. He further alleges that the BLM "engaged in multiple acts of employment harassment, discrimination, and retaliation . . . based on his race, color, national origin, sex, age, and reprisal for engaging in certain protected activity." Id.

The plaintiff has brought a total of eighteen claims in this lawsuit. Counts I through VI purportedly arise under the United States Constitution and are alleged against the individual Federal Defendants, defendant Sheskey and defendant Sparks-Sheskey. Dkt. No. 1-1 at 139-46. The plaintiff brings Counts VII, VIII, IX, X, XI, XII, XIX, XX, XXI, XXII, XXIII and XXIV under the Wisconsin constitution and Wisconsin statutory law, dkt. no. 1-1 at 157-70; the defendant in those claims is the government, dkt. no. 10. Count XXV is the plaintiff's claim for damages. Dkt. No. 1-1 at 170.

7

## III. Discussion

A. Defendant Sheskey's Motion to Dismiss (Dkt. No. 28)

On September 26, 2022, Sheskey moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction), 12(b)(4) (insufficient process), 12(b)(5) (insufficient service of process) and 4(m) (untimely and improper service). Dkt. No. 28-1. He included a declaration averring that, as of September 16, 2022, he "was not personally served with a copy of the summons and of the complaint"; that "[t]o the best of his knowledge, neither the summons nor the complaint . . . were left at [his] current home"; that he had "not authorized or appointed anyone to receive the summons or the complaint . . . for [him]"; and that he is not "aware of [any] attempts to serve him with the summons or complaint." Dkt. No. 28-2 at ¶¶ 2-5. He contends that because the case was removed on June 10, 2022, the plaintiff had until September 8, 2022 (ninety days from the date of removal) to comply with the federal service requirements. Dkt. No. 28-1 at 2 (citing UWM Student Ass'n v. Lovell, 888 F.3d 854, 857-58 (7th Cir. 2018); Cardenas v. City of Chicago, 646 F.3d 1001, 1004-05 (7th Cir. 2011)). Because he alleges that "the allotted time for service expired on September 8, 2022," and that as of September 26, 2022, the plaintiff had not yet served him with the summons and complaint, Shekskey argues that the court should dismiss him from the case because it lacks personal jurisdiction over him. Id. at 2.

Although on February 27, 2023, the court received from the plaintiff a document titled "Plaintiffs Reply to Defendant's Motion to Dismiss Requesting

8

an Additional Extension of Time" (which, in the body of the document, describes it as a "motion brought pursuant to FRCP," dkt. no. 49 at 2), the plaintiff did not respond to Sheskey's requests to dismiss for insufficient process (Rule 12(b)(4)), for insufficient service of process (Rule 12(b)(5) or for untimely service (Rule 4(m). Dkt. No. 49. The plaintiff did not assert in this document that he had served Sheskey with a copy of the summons and complaint and did not request an extension of time to do so. Id. Instead, the plaintiff asserted that the defendants had "unlawful[ly] remov[ed]" the case to federal court, dkt. no. 49 at 1, then focused the remainder of the brief on disputing Sheskey's claims that his complaint was too long and that it did not state claims for which a federal court could grant relief (in other words, disputing only Sheskey's motion to dismiss under Rule 12(b)(6)).

        1.    *Applicable Law*

Jurisdiction is "the courts' statutory or constitutional *power* to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis in the original). "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). "Without jurisdiction the court cannot proceed at all in any cause." Steel Co., 523 U.S. at 94 (quoting *Ex Parte* McCardle, 7 Wall. 506, 514 (1868)).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Cap.

Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). A federal court "cannot exercise personal jurisdiction over a defendant unless the defendant has been properly served with process," and "the service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and complaint." United States v. Ligas, 549 F.3d 497, 500 (7th Cir. 2008) (citations omitted). When a defendant challenges the manner of service through a motion to dismiss under Rule 12(b)(5), the plaintiff bears the "burden to demonstrate that the district court has jurisdiction over each defendant through effective service." Cardenas, 646 F.3d at 1005.

Federal Rule of Civil Procedure 4 governs service of process in federal courts. Rule 4(m) requires that if a defendant is not "served within 90 days after the complaint is filed, the court—on its own motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specific time." But Rule 4(m) also says that "if the plaintiff shows good cause for the failure [to serve within 90 days], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). If a case is removed from state court, the plaintiff's ninety-day window to effect service begins to run on the date of removal. Lovell, 888 F.3d at 858.

The decision whether to dismiss a defendant or order that service be made within a specific time "is inherently discretionary." Cardenas, 646 F.3d at 1005.

### 2.   *Analysis*

If this court does not have personal jurisdiction over Sheskey, it does not have the authority to decide the substantive question of whether the plaintiff's

10

complaint fails to state a claim for which a federal court may grant relief. That means that the court first must consider whether the plaintiff has properly served Sheskey as required by Rule 4, so that it can determine whether it can exercise personal jurisdiction over Sheskey or whether it must dismiss him for insufficient service of process under Fed. R. Civ. P. 12(b)(5).[6]

The Federal Defendants removed the case to this court on June 10, 2022, dkt. no. 1, which means that the plaintiff had until September 8, 2022 to effect timely service of the summons and complaint on each of the defendants, see Lovell, 888 F.3d at 858 & n.2. On September 26, 2023—eighteen days after expiration of that deadline to effect timely service—Sheskey filed his motion to dismiss, which included the instant Rule 12(b)(5) motion to dismiss for failure to effect service in a timely manner. Dkt. No. 28. Once Sheskey challenged the sufficiency of the service of process on him, the burden of demonstrating that this court had personal jurisdiction over Sheskey through effective service of the summons and complaint shifted to the plaintiff. Cardenas, 646 F.3d at 1005 ("A defendant may enforce the service of process requirements through a pretrial motion to dismiss. Fed. R. Civ. P. 12(b)(5)."). The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each

---

[6] Sheskey also asks the court to dismiss him for insufficient process under Fed. R. Civ. P. 12(b)(4). "Rule 12(b)(4) motions challenge the form of process whereas Rule 12(b)(5) motions challenge the manner in which the process was served." Holmes v. Social Security Administration, Case No. 1:22-cv-01080-JES-JEH, 2022 WL 2080336, at *2 (C.D. Ill. April 14, 2022) (citing Luxottica Grp. S.P.A. v. Th P'ships and Unincorporated Ass'ns Identified on Schedule "A", 391 F. Supp. 3d 816, 821 (N.D. Ill. 2019)).

11

defendant through effective service. See Homer v. Jones-Bey, 415 F.3d 748, 754 (7th Cir. 2005).").

On December 19, 2022—three months and eleven days after the deadline for him to effect service on the defendants—the court received from the plaintiff a request asking the court "defer" imposing a deadline for his response to Sheskey's motion to dismiss (and the Federal Defendants' and government's respective motions to dismiss) until after the court had ruled on his motion to remand. Dkt. No. 43 at 2. The plaintiff had dated the documents December 9, 2022—three months and one day after deadline for him to effectuate proper service and two and a half months after defendant Sheskey filed his motion to dismiss. Although the court received the plaintiff's request nearly three months after the plaintiff's deadline to respond had expired and two and a half months after receiving Sheskey's motion to dismiss, on January 11, 2023, the court issued an order extending the plaintiff's deadline for responding to all three motions to dismiss by another month, to the end of the day on February 17, 2023. Dkt. No. 48 at 8.

On February 27, 2023—ten days after the deadline to respond to the motions to dismiss had expired—the court received from the plaintiff another request to extend the deadline to respond until after the court ruled on his motion to remand. Dkt. No. 49. As the court has explained, the plaintiff included with that request nearly twenty-two pages of legal argument on why the court should not dismiss his case. Id. at 2-24. But despite including those nearly twenty-two pages of legal argument, the plaintiff still did not address

12

Sheskey's arguments that the plaintiff had not properly served him, did not assert that he had properly served Sheskey with a copy of the summons and complaint, did not claim that good cause existed to excuse his failure to timely effect service and did not request an extension of time to do so. Dkt. No. 49 at 2-24.

Over three months later, on June 9, 2023, the court received from defendant Sheskey a brief in opposition to the plaintiff's motion for entry of default against defendant *Sparks-Sheskey*. Dkt. No. 62. For reasons the court will explain when it discusses the plaintiff's motion for entry of default against Sparks-Sheskey, the court has not considered defendant Sheskey's arguments in opposition to that motion. But in a footnote, defendant Sheskey stated that he was aware that the plaintiff had sent a document "by email to the Court's proposed order inbox" around mid-January 2023. Id. at 2 n.1. Because the undersigned's proposed order email inbox is not continuously monitored, and because a party cannot "file" a document by emailing it to the proposed order inbox, the court was unaware that the plaintiff had sent anything to that email box. Defendant Sheskey's June 2023 pleading caused the court's staff to check the proposed order email box, where staff found a document titled "Plaintiff's Notice of Proof of Service Pursuant to Wis. Statutes §801.10(4)(b)," sent to the undersigned's proposed order email box on January 11, 2023, see dkt. nos. 62 at 2 n.1; 65 at 4-5.

The plaintiff stated in this document that he had "properly served all defendants in this case, contrary to Defendants false assertions and

13

continuous changes in statements of whom they do and do not represent . . . ." Dkt. No. 64-1 at 23. This assertion hints that the plaintiff may have meant for this document to be a response to Sheskey's September 2022 Rule 12(b)(5) motion to dismiss for insufficient service of process. The plaintiff did not use the official federal AO 440 proof of service form; he appears to have created the document himself. "22cv680 Exhibit 3" appears at the top of the document. The name of the court is listed as "Milwaukee Division of the Eastern District of Wisconsin," a designation that the court does not use on its official forms. In the body of the document, after arguing that he was not obligated to show proof of service, the plaintiff asserted that "service was lawfully executed upon Defendants Rusten Sheskey and Kathrine, Shesky-Sparks, pursuant to Wisconsin law and federal law." Dkt. No. 64-1 at 22. The document *is* more a brief than a notice of proof of service—it is four pages long and contains arguments and citations. But nowhere does it reference Sheskey's September 2022 Rule 12(b)(5) motion to dismiss. Id. at 20-23. Other than asserting that the plaintiff had effected proper service, it did not address any of Sheskey's other Rule 12(b)(5) arguments.

If the plaintiff intended this document to be a response to Sheskey's Rule 12(b)(5) motion to dismiss, he did not timely file the document (which he was required to file with the Clerk of Court—not email to the undersigned's proposed orders email inbox—by February 17, 2023). While the plaintiff avers in a May 2023 affidavit (submitted with his motion for entry of default against defendant Sparks-Sheskey) that "[d]efendant(s) was (were) served with multiple

14

copies of the summons and complaint commencing on or about April 27th, 2022 [] as reflected on the docket sheet by the proof of service filed before this bar on our about January 11th, 2023," dkt. no. 61 at ¶C, the clerk's office did not receive any documents relating to service in January 2023.

The plaintiff *did* send the proof of service document to the undersigned's proposed order email box on January 11, 2023. But the court's local rules do not allow parties to "file" documents with the judges' chambers. General Local Rule 5(b) (E.D. Wis.) requires that papers filed by non-electronic means "must be filed with the Clerk of Court and not in the judge's chambers." The undersigned's publicly available guidance for litigants, "Tips for Parties Practicing Before Judge Pepper," explains that "[t]he proposed order email box is exactly what it sounds like—a mailbox set up *solely to receive proposed orders.*" Tips for Parties Practicing Before Judge Pepper, at ¶J, https://www.wied.uscourts.gov/judges/pamela-pepper (last updated Nov. 8, 2022) (emphasis added). The document the plaintiff sent to the email box on January 11, 2023 was not a proposed order. He was required to file that document by sending it to the Clerk of Court. The Clerk of Court did not receive the document on January 11, 2023.

If this were the first and only instance of the plaintiff attempting to file briefs, motions or other substantive documents by emailing them to the undersigned's proposed order email box, the court might conclude that the January 11, 2023 email was an error. But this was not the first such instance—in a July 2022 email, after the plaintiff had submitted a "L[ocal]

15

R[ule] 7(h) Expedited Motion to Efile [sic] Proposed Orders" to the undersigned's proposed order email box, court staff advised the plaintiff that the proposed order email box "is not continuously monitored by court staff and is only to be used to submit Word versions of proposed orders that have already been docketed in a case." Court staff also advised the plaintiff that "[t]he court does not accept filings via email—all documents you wish to file must be mailed or delivered in person to the Clerk of Court for this district[,]" provided him with the mailing address for the Clerk of Court and told him that "[t]he court will take no further action on the attached motion." Since this correspondence, the plaintiff has continued to submit motions, briefs and other document that are *not* proposed orders to this undersigned's proposed order email box. Because those documents—including the service-related documents the plaintiff emailed on January 11, 2023—were not sent to the Clerk of Court as required, they were not filed on the docket.

On July 5, 2023, the clerk's office received by mail and docketed as an attachment to the plaintiff's motion for recusal and to strike certain pleadings the service-related document he claims to have "filed" on January 11, 2023. Dkt. No. 64-1. This was approximately five months after the plaintiff's February 17, 2023 deadline to respond to defendant Sheskey's motion to dismiss, dkt. no. 48 at 8, and almost six months after the plaintiff emailed the document to the undersigned's proposed order email box. Although this document is not styled as a response to Sheskey's Rule 12(b)(5) motion, does not directly address Sheskey's arguments and was not timely filed, the court has reviewed

16

it to determine whether it demonstrates that the plaintiff properly served Sheskey.

The document is signed and dated January 11, 2023. Dkt. No. 64-1 at 20-23. It asserts that "process of service was lawfully executed" on defendants Sheskey and Sparks-Sheskey in accordance with Wis. Stat. §801.11(1)(c) (service by publication) and purports to establish proof of service under Wis. Stat. §801.10(4)(b) (proof of service by publication if service is challenged) and Fed. R. Civ. P. 4(l). Id. at 21-22. Federal Rule of Civil Procedure 4(e)(1) states that "an individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Under Wisconsin law, a plaintiff must serve an individual defendant by *personally* serving the summons on the defendant. Wis. Stat. §801.11(1)(a). If, with reasonable diligence, a plaintiff is unable to effectuate service by personally serving the individual defendant, the plaintiff may leave a copy of the summons at the defendant's usual place of abode in the presence of a competent member of the defendant's family who is at least fourteen years old and informed of the summons' contents; in the presence of a competent adult residing in the defendant's abode who is informed of the summons' contents; or "pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made." Id. §801.11(1)(b). If, with reasonable diligence, the plaintiff is unable to serve the defendant by any of

17

those means, "service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing." Id. §801.11(1)(c); see also Krahenbuhl v. Ostrich Ranchers Ltd. P'ship, Case No. 96-C-246, 2007 WL 3012712, at *3 (E.D. Wis. Oct. 12, 2007) ("To effect proper service by publication [under §801.11(1)(c)], a plaintiff must publish a class 3 notice once each week, for three consecutive weeks, in 'a newspaper likely to give notice in the area or to the person affected.'" (quoting Wis. Stat. §§985.02(1), 985.07(3)).

While the "reasonable diligence" described in Wis. Stat. §§801.11(1)(a) and (b) does not require "all possible diligence which may be conceived," Haselow v. Gauthier, 212 Wis. 2d 580, 589 (Wis. Ct. App. 1997), it *does* require a plaintiff to "exhaust with due diligence any leads or information reasonably calculated to make personal service possible," LaVine v. City of Haywood, Case No. 04-C-0201, 2004 WL 2110753, at *2 (W.D. Wis. Sept. 20, 2004) (citing West v. West, 158 Wis. 2d 158, 166 (Wis. 1978)); see also, *e.g.*, Welty v. Heggy, 124 Wis. 2d 318, 325 (Wis. Ct. App. 1985) (upholding service by publication in a case where deputy sheriffs made nineteen attempts to serve the defendant personally); Emery v. Emery, 124 Wis. 2d 613, 624-25 (Wis. 1985) (upholding service by publication after the plaintiff attempted to serve the defendant personally at an address where she reasonably believed the defendant would be, and the defendant admitted that he was continuously traveling and refused to give the plaintiff (his wife) his current address).

The service documents the plaintiff has filed with the court do not demonstrate that the plaintiff made reasonably diligent efforts to effect

18

personal service on Sheskey under Wis Stat. §801.11(1)(a) or by substitute service under Wis. Stat. §801.11(1)(b) before resorting to service under §801.11(1)(c). In fact, the proof of service does not reveal that the plaintiff made *any* attempt to effect personal service on Sheskey. It quotes the text of §801.11(1)(c) and asserts that "notice of process of service was lawfully executed." <u>See</u> Dkt. No. 64-1 at 21-22. Without evidence that the plaintiff first made reasonably diligent efforts to effect personal service under §801.11(1)(a) and, if reasonable diligence did not result in service under that section, made reasonably diligent efforts to effect substitute service under §801.11(1)(b), service under §801.11(1)(c)—even if the plaintiff complied with the requirements for service by publication—was not proper.

Even if the plaintiff had demonstrated that he had made reasonably diligent efforts to effect personal and substitute service without success, the plaintiff has not demonstrated that he effected proper service by publication under §801.11(1)(c). The plaintiff purports to provide proof of service by publication under Wis. Stat. § 801.10(4)(b). Dkt. No. 64-1 at 22-23. Section 801.10(4)(b) provides:

> If the defendant appears in the action and challenges the service of summons upon the defendant, . . .
>
> (b) *[s]ervice by publication shall be proved by the affidavit of the publisher or printer, or the foreman or principal clerk, stating that the summons was published and specifying the date of each insertion, and by an affidavit of mailing* of an authenticated copy of the summons, with the complaint or notice of the object of the action, as the case may require, made by the person who mailed the same.

19

Wis. Stat. §801.10(4)(b) (emphasis added). Under Wisconsin law, then, proof of service by publication requires the plaintiff to provide the court with an affidavit from a representative of the publication, specifying the dates on which the summons was published *and*—unless the plaintiff demonstrates that he is excused from §801.11(1)(c)'s mailing requirement because the defendant's post-office address "cannot be ascertained with reasonable diligence"—an affidavit of mailing of the summons and complaint (or notice of the object of the action) from a third-party mailer. Wis. Stat. §§801.11(1)(c), 801.10(4)(b). The plaintiff also purports to provide proof of service under Federal Rule of Civil Procedure 4(l)(1); that rule requires that proof of service "must be made to the court" and "must be by the server's affidavit." Dkt. No. 64-1 at 22.

The plaintiff's proof of service by publication is deficient under both Wisconsin and federal law. The plaintiff has not provided an affidavit of mailing, as required under §801.11(1)(c). See also Wis. Stat. §801.10(4)(b) ("Service by publication shall be proved . . . by an affidavit of mailing of an authenticated copy of the summons, with the complaint or notice of the object of the action, as the case may require, made by the person who mailed the same."). The plaintiff has not demonstrated that Sheskey's and Sparks-Sheskey's respective post-office addresses "cannot be ascertained with reasonable diligence," which would excuse him from the mailing requirement.

The plaintiff asserts that his proof of service "serves as an additional affidavit, by attachment of the affidavit, i.e., the invoicing of the Plaintiff by the 3rd party server as Exhibit A, and the undersigned signatory affirmation he

20

paid for and reviewed that publication was properly posted." Dkt. No. 64-1 at 22. Exhibit A appears to be a May 2022 email chain between the plaintiff and the "Classified Legals Supervisor" at the Kenosha News. See id. at 22, 26-30. The email chain involves the plaintiff's request for publication of a notice of this case (which, at that time, was pending in state court) in the May 6, 13 and 20 editions of the Kenosha News and a document the plaintiff says is an invoice. Id. at 26-30. There is no sworn affidavit from the *publisher* of the Kenosha News certifying that the notice was published, as required by both Fed. R. Civ. P. 4(l)(1) and Wis. Stat. §801.10(4)(b). The chain of emails is not an affidavit, and the plaintiff's (unsworn) "affirmation" that he paid for and reviewed the publication does not comply with the statute's requirement of an affidavit from the *publisher*. The plaintiff has not demonstrated that he effected proper service by publication.

The plaintiff has not met his burden to show that he properly served Sheskey (or Sparks-Sheskey) before September 8, 2022. Rule 4(m) requires the court to either dismiss the case without prejudice as to a defendant who was not served within the time specified or order that service be made within a specified time. There is one exception to that requirement—if the "plaintiff shows good cause for the failure" to serve the defendant within the time specified, the court "must extend the time for service for an appropriate period." The plaintiff has not acknowledged Sheskey's Rule 12(b)(5) arguments. He has not addressed the requirements of the Wisconsin service statute. He has not acknowledged that he was required to first make reasonable efforts to

21

effect personal service, then make efforts to effect substitute service, before he was authorized to attempt service by publication. He has not explained why he did not file the proof of service document until months after he emailed it to the undersigned's proposed orders email box, or months after the deadline for him to respond to Sheskey's motion to dismiss. The plaintiff has not shown good cause for his failure to properly and timely serve Sheskey.

Finally, the court will not exercise its discretion to order that service be made by a specified time. The deadline for the plaintiff to effect service (or to ask for an extension of time to do so) expired eighteen months ago. Although Sheskey filed his motion to dismiss only a couple of weeks after the service deadline had expired, the plaintiff did not attempt to provide the court with service documents for three months, and then provided those documents via a method that the court had advised him was not the appropriate way to file something with the court. Other than filing the documents at Dkt. No. 64-1, the plaintiff has not addressed Sheskey's arguments regarding service or acknowledged the requirements of the Wisconsin and federal service statutes.

The fact that the plaintiff is representing himself does not excuse him from meeting his service obligations. [7] See Collins v. Illinois, 554 F.3d 693, 697

_____

[7] As the court has observed in prior orders, despite his lack of formal legal education, the plaintiff has shown himself to be a capable *pro se* litigant. In addition to this case, he has two other cases pending with in court: Hobbs v. Willis, *et al.*, Case No. 22-cv-467 and Hobbs v. Haaland, *et al.*, 22-cv-721. At the time of this writing, he has filed in this case alone a motion to remand (Dkt. No. 5), a motion for leave to file documents (Dkt. No. 6), a motion to allow E-filing (Dkt. No. 16), a motion for leave to appeal without prepaying the filing fee (Dkt. No. 26), a response to the defendants' motion for extension of time (Dkt. No. 32), a motion for an extension of time to respond to the defendants'

(7th Cir. 2009) ("As we have repeatedly held, even *pro se* litigants must follow procedural rules."). The court will grant Sheskey's motion to dismiss and will dismiss him as a defendant, without prejudice.

B.  Plaintiff's Motion for Entry of Default (Dkt. No. 59)

The court next addresses the plaintiff's motion for entry of default against defendant Sparks-Sheskey, because its resolution is based on the same facts the court discussed in resolving Sheskey's Rule 12(b)(5) motion to dismiss.

On May 18, 2023, the plaintiff asked the Clerk of Court to enter default against Sparks-Sheskey under Fed. R. Civ. P. 55(a), due to her "fail[ure] to appear, plead or otherwise defend." Dkt. Nos. 59, 60. In support of this motion, the plaintiff filed an affidavit, referencing his proof of service and averring that defendant Sparks-Sheskey "was . . . served with multiple copies of the summons and complaint commencing on or about April 27th, 2022 as reflected on the docket sheet by proof of service filed before this bar on or about January 11th, 2023[.]"[8] Dkt. No. 61 at ¶C. Regarding the specifics of service, he averred that he

---

motions to dismiss or consolidate (Dkt. No. 43), a second motion to remand (Dkt. No. 46), a motion for extension of time and reply (Dkt. No. 49), an expedited motion requesting recusal (Dkt. No. 53), a motion for entry of default (Dkt. No. 59) and a motion re-requesting recusal and to strike pleadings (Dkt. No. 64).

[8] As discussed in the prior section, because the plaintiff emailed the January 11, 2023 proof of service to the undersigned's proposed order email box rather than sending it to the clerk's office, the document did not get filed until July 2023, when the clerk's office received it as an attachment to the plaintiff's motion for recusal and to strike certain pleadings. Dkt. No. 64-1. In contrast,

served Kathrine [sic] . . . Sparks, in her personal and individual capacity pursuant to Wisconsin Law at her last known contact addresses inclusive of: electronic email; and by US Postal Service 1st Class Mail delivery and by a 3rd party process server at her last known address and by "publication" through the entity known as "The Kenosha News[.]"

Id. at ¶D. Finally, he averred that Sparks-Sheskey's time to respond to the complaint "expired on or about March 30th, 2023," but that as of the date of the affidavit (May 18, 2023), she had "failed to appear, plead or otherwise defend within the time allowed and, therefore, is now in default." Id. ¶¶F-G.

Sparks-Sheskey is not represented by counsel and did not respond to the request for default.[9]

Federal Rule of Civil Procedure 55(a) says that if a party fails to plead or otherwise defend, and "that failure is shown by affidavit or otherwise," the clerk must enter default. Again, however, because "service is a prerequisite to the court's jurisdiction," a court cannot enter default against a party who hasn't been served. Kolcu v. Verizon Commc'ns, Inc., Case No. 23-CV-849, 2023 WL 7219881, at *1 (E.D. Wis. Nov. 2, 2023). "Before the district court may default a defendant, the plaintiff must prove service." Golub v. United States, 593 F.

---

the affidavit the plaintiff filed in support of the request for default is dated May 18, 2023, notarized May 18, 2023 by a Wisconsin notary public and was filed with the clerk's office on May 18, 2023. Dkt. No. 61.

[9] Although Sparks-Sheskey is not represented by counsel, *Sheskey* responded to the plaintiff's motion for entry of default against her, dkt. no. 62, as did the Federal Defendants, dkt. no. 63. Neither Sheskey nor the Federal Defendants have explained how they have standing to oppose a motion for entry of default against another defendant. Accordingly, the court has not considered their arguments in analyzing the plaintiff's motion for entry of default.

App'x 546, 548-49 (7th Cir. 2014) (citing Fed. R. Civ. P. 4(l)); <u>Cardenas</u>, 646
F.3d at 1005 (noting plaintiff has burden of showing proper service of process);
<u>United States v. Kramer</u>, 225 F.3d 847, 857 (7th Cir. 2000) (observing that
default judgment rendered without personal jurisdiction is void)); <u>see also</u> <u>Wold</u>
<u>v. Robart</u>, Case No. 17-cv-252, 2018 WL 1135396, at *2 (E.D. Wis. Feb. 28,
2018) ("In order to determine whether the plaintiffs are entitled to default,
therefore, the court must determine whether they properly served the
defendant under Rule 4.").

The plaintiff avers that he properly effected service on Sparks-Sheskey
under Wisconsin law, both personally and by publication "through the entity
known as 'The Kenosha News,'" and that his proof of service confirms as much.
Dkt. No. 61 at ¶¶C-D. But as the court explained in ruling on Sheskey's Rule
12(b)(5) motion to dismiss, the plaintiff's service documents reveal that he did
not first make reasonable efforts to personally serve Sparks-Sheskey or to effect
substitute service, and that he did not comply with the requirements of Wis.
Stat. §801.11(1)(c) to effectuate service by publication. Although the plaintiff
asserts that he personally served defendant Sparks-Sheskey, he has provided
no proof to support that claim. The plaintiff has not provided an affidavit from
a third-party process server attesting that the process server either
successfully served Sparks-Sheskey personally or that the process server made
attempts to do so but was unsuccessful. <u>See</u> Fed. R. Civ. P. 4(l)(1) (providing
that "proof of service must be made to the court" and, unless service is effected
by a U.S. marshal or deputy marshal, "proof must be by the server's affidavit");

25

see also Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old *and not a party* may serve a summons and complaint.") (emphasis added). It is the plaintiff's burden to prove default, which means it is his burden to prove that Sparks-Sheskey was served and that the court has personal jurisdiction over her. He has not met that burden.

To the extent the plaintiff suggests that he served Sparks-Sheskey via email and/or mail which he himself sent, the Federal Rules of Civil Procedure do not allow for service of process on an individual U.S. resident via email or U.S. mail, nor do they allow a plaintiff, as a party, to effect personal service on a defendant, Fed. R. Civ. P. 4(c)(2). The plaintiff has not properly served Sparkes-Sheskey. The court will deny the plaintiff's motion for entry of default.

Despite finding that the plaintiff has not properly served Sparks-Sheskey sufficient to allow the court to exercise personal jurisdiction and enter default, however, the court will not dismiss her as a defendant. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). For that reason, "a district court should not *sua sponte* dismiss claims based on a lack of personal jurisdiction because the defendant may waive the defense." Flava Works, Inc. v. Does, Case No. 12 C 07869, 2014 WL 222722, at *4 (N.D. Ill. Jan. 21, 2014). Although the Second Circuit has approved a district court's *sua sponte* dismissal of a defendant who has failed to answer or appear for lack of personal jurisdiction, Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,

26

619 F. 3d 207, 214 (2d Cir. 2010), the court has not found a Seventh Circuit case reaching the same conclusion.

C.   <u>Plaintiff's Motion for Recusal and to Strike the Defendants' June 9, 2023 Responses to his Motion for Entry of Default (Dkt. No. 64)</u>

On July 5, 2023,[10] the plaintiff filed a motion titled "Plaintiff's Motion Pursuant Federal Rules of Civil Procedure Rules 8(b)(6); 10(a), (c); 11; 12; 55(d); and 83(a)(2) General/Civil Local Rules (5); (7), (10) and (83) Re-Requesting Recusal and Striking Defendant's Pleading's as Concurrently filed June 9th, 2023." Dkt. No. 64. The motion asks the court to recuse itself and to strike from the record the defendants' June 9, 2023 responses to his motion for entry of default.

### 1.   *Motion for Recusal*

In moving for recusal, the plaintiff renews the arguments he raised in his May 15, 2023 motion for recusal. <u>Compare</u> Dkt. No. 53 (arguing that the court selectively applies local rules adversely to plaintiff, that the court unfairly denied him electronic filing privileges, that improper "*ex parte* communication has occurred between the presiding judge and/or clerks of this jurisdiction and/or the US Attorney's Office for the ED Wisconsin" and that the court has been withholding his filings), <u>with</u> Dkt. No. 64 (same). The court rejected those arguments in its March 30, 2023 order, <u>see</u> dkt. no. 56 at 30-32, and will not address them again here.

---

[10] The plaintiff dated this motion June 27, 2023—eight days (six mailing days) before the clerk's office received it.

The plaintiff includes in the instant recusal motion, however, an allegation that he did not raise in his previous motion: he alleges that his proof of service was improperly withheld by the court, which he alleges shows the court's bias against him. Dkt. No. 64 at 20. He claims that although he filed the proof of service "through at least the US Mail in addition to the courts electronic mailbox despite assertions to the contrary made by either the clerk of this court, or opposing counsel," "nearly 8 months later, there is no record of Plaintiff's pleadings of November 11th, 2022,[11] having been filed into the PACER court records." Id.

The court has explained that it learned the plaintiff had sent a document to the undersigned's proposed orders email inbox through a footnote in Sheskey's brief in opposition to the plaintiff's motion for entry of default against Sparks-Sheskey, and that the clerk's office did not receive that document and docket it until July 5, 2023—the day the court received the plaintiff's second motion for recusal.

The plaintiff claims to have "transmitted" his proof of service to all parties "on or about November 11th, 2022." Dkt. No. 64 at 20. But the clerk's office did not receive the proof of service on or around November 11, 2022, nor did the

_____

[11] The plaintiff attached the proof of service to the motion for recusal and claims that he "transmitted [it] to all parties on or about, November 11th, 2022." Dkt. No. 64 at 20. As the court has explained, the plaintiff dated the proof of service "January 11th, 2023," dkt. no. 64-1 at 20, and his affidavit in support of his motion for entry of default avers that he filed it "on or about January 11th, 2023," dkt. no. 61 at ¶C. None of the documents received and docketed by the clerk's office in July 2023 are dated November 11, 2022. Dkt. No. 64-1. The court suspects that the plaintiff meant "January 11, 2023" rather than "November 11, 2022."

28

clerk's office receive it on or around January 11, 2023 (the date the plaintiff listed on the proof of service). Although the plaintiff attached the service documents to the instant motion to recuse, he did not include evidence supporting his assertion that he had transmitted or mailed or sent the service documents to the clerk's office in November 2022 (or in January 2023).

Because the plaintiff's motion does not state a basis for the court to recuse itself, the court will deny the motion to the extent it seeks recusal.

### 2. *Motion to Strike*

The plaintiff also asks the court to strike the defendants' June 9, 2023 responses to his motion for entry of default as to Sparks-Shesky, arguing that the request is supported by Fed. R. Civ. P. 12(f) and 11(b), as well as some of this court's local rules. Dkt. No. 64 at 14-19.

The court has not considered the responses filed by Sheskey and the Federal Defendants, because they do not represent Sparks-Sheskey and they have not explained how they have standing to respond to a request for default directed at Sparks-Sheskey or how entry of default against Sparks-Sheskey would impact their rights. But the plaintiff has not stated a valid basis for the court to *strike* those responses.

The plaintiff asks the court to strike the responses as a sanction under Rule 11(b)(3). Dkt. No. 64 at 17-18. But the plaintiff has not met the procedural requirements for imposition of Rule 11 sanctions. Rule 11(c)(2) states that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). The plaintiff has combined a motion for Rule

11 sanctions with (among other things) a Rule 12(f) motion to strike and a motion for recusal. Dkt. No. 64. Further, before a party may file with the *court* a motion for Rule 11 sanctions, the party first must serve the motion on the *defendant* and wait "21 days after service" to allow the defendant to "withdraw[] or appropriately correct[]" "the challenged paper, claim, defense, contention or denial." Fed. R. Civ. P. 11(c)(2). The plaintiff has not certified that he first served the motion to strike on Sheskey and the Federal Defendants, providing them with the requisite twenty-one-day safe harbor period, before filing with the court the motion for Rule 11 sanctions.

Federal Rule of Civil Procedure 12(f) allows the court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "As a general rule, motions to strike are disfavored and infrequently granted." Black v. Long Term Disability Ins., 373 F. Supp. 2d 897, 904 (E.D. Wis. 2005) (citing Stabilisierungsfonds Fur Wein v. Kaiser, Stuhl Wine Distribs. Pty., Ltd., 647 F.2d 200, 201 N.1 (D.C. Cir. 1981)). "The decision to grant or deny a motion to strike is vested in the trial court's sound discretion." Id. (citing Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664-65 (7th Cir. 1992)). The court hasn't considered the defendants' responses in ruling on the motion for entry of default, so there is no need for it to exercise its discretion to engage in the disfavored activity of striking them.

The plaintiff asks the court to strike the responses as a sanction under this court's General L.R. 83(f), contending that the responses violate various of the court's local rules. Dkt. No. 64 at 18-19. Rule 83(f) provides that "[t]he

30

Court may impose appropriate sanctions on any party or attorney who fails to comply with a Local Rule[,]" but cautions that "[a] party should not file a motion seeking sanctions for alleged noncompliance with a Local Rule unless the alleged violation is egregious or unfairly prejudicial." General L.R. 83(f).

The plaintiff argues that the court should strike the responses because "Plaintiff was never provided any notice of the[m] . . ., inclusive of any electronic notice, as required per LR 5(a)[.]" Dkt. No. 64 at 18 (The plaintiff cites Civil L.R. 5(a), but Civil. L.R. 5 contains no subparts.) The plaintiff previously had asked for permission to file electronically, dkt. no. 16, which the court denied, dkt. no. 50; this explains why he did not receive electronic notice of the responses to his motion for entry of default. Rule 5 does not entitle the plaintiff to "electronic notice" when the defendants submit filings via the court's electronic filing system. See Civ. L.R. 5 ("A separate certificate of service is not required for papers served electronically if all parties were served through the Court's Electronic Case Filing (ECF) system."). Rather, Rule 5 entitles him to paper copies of all documents filed by the court and other parties, and it requires the defendants to (1) mail to the plaintiff any document uploaded to the ECF system on the day it is uploaded and (2) to upload a certification, averring that they have done so. The defendants have uploaded such certifications. Dkt. Nos. 62-1, 63-1. Perhaps the plaintiff meant to claim that he never received the paper copies of the responses, but that is not what he has said.

The plaintiff also contends that the court should strike the responses because they do not comply with Civil L.R. 7(b), which requires the non-moving party to file any opposition within twenty-one days. Dkt. No. 64 at 18, 19 (citing Civil L.R. 7(b)). The plaintiff filed his motion for entry of default on May 18, 2023, dkt. no. 59, and the defendants filed their responses on June 9, 2023, dkt. nos. 62, 63, one day outside the twenty-one-day window imposed by Civil Local Rule 7(b). The court has not sanctioned the plaintiff for late or improper filings even when his filings have been far more than a single day late. The court has not considered the substance of the defendants' responses; there is no basis for striking them.

The plaintiff argues that the court should strike the defendants' responses because "[c]ounsel submitting the pleadings do not represent [defendant Sparks-Sheskey]." Dkt. No. 64 at 18. The court agrees that defense counsel do not represent Sparks-Sheskey, which is why the court did not consider their responses when it ruled on the motion for default.

The plaintiff argues that the responses should be stricken because they "are non-conforming as they do not contain number [sic] paragraphs[,]" as required by Civil Local Rule 10(a). Dkt. No. 64 at 19. Rule 10 states the formatting requirements for "pleadings"—the filings the plaintiff seeks to strike are not pleadings but responses to a motion. See Civil L.R. 10(a) ("Form of Pleadings. (a) Paragraphs. A party, including a party proceeding pro se, must state its claims or defenses in numbered paragraphs[.]"). He also argues that the court should strike the responses because they "fail[] to provide notice of

the statute or rule under which they were submitted, and lack notification of supporting papers," as required by Civil L.R. 7(a)  Dkt. No. 64 at 198. But Rule 7(a) specifies the form and procedure for *motions*—the filings the plaintiff seeks to strike are not motions, but *responses* to motions. <u>See</u> Civil L.R. 7(a) ("Every motion must state the statute or rule pursuant to which it is made and . . . must be accompanied by: . . . (2) a certificate stating that no memorandum or other supporting papers will be filed.").

The court agrees with the plaintiff that it should not consider the defendants' responses to a motion that was not directed at them and the court did not consider the responses. It disagrees only with the plaintiff's claims that there is a basis for *sanctioning* the defendants by striking those responses.

D. <u>Federal Defendants' Motion to Dismiss Counts I to VI (Dkt. No. 36)</u>
<u>Government's Motion to Dismiss Counts VII to XXV (Dkt. No. 38)</u>

Thirteen of the sixteen Federal Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction) and 12(b)(5) (insufficient service of process), arguing that the court lacks jurisdiction over them because the plaintiff never served them. Dkt. No. 37 at 11-12. All the Federal Defendants also move to dismiss Counts I through VI of the complaint under Rule 12(b)(6), arguing that those counts fail to state a claim on which relief can be granted. <u>Id.</u> at 6-10. The government similarly moves to dismiss the remaining counts (Counts VII through XXV) under Rule 12(b)(6), arguing that those counts fail to state a claim on which relief can be granted. Dkt. No. 39 at 7-16.

33

1.    *Service (Federal Defendants Only)*

Although the "Federal Defendants" refer to themselves that way, the allegations in the complaint are sparse as to each defendant's employment. Despite its length, the complaint does not contain a section identifying the role of each defendant. The complaint describes eight individuals—defendants Amme, Todd, Guenaga, Leverette, Elser, Anderson, Gettinger and Holzel—as "certain employees of the DOI-BLM [Department of the Interior, Bureau of Land Management]." Dkt. No. 1-1 at 7-8. It alleges that there were eight "others employed by certain Federal and State Agencies," id. at 9, whom the complaint identifies as "**After the Fact Co-Conspirators**" and names Mitchell, Wiler, Helm, Howell, Carman, LaBarge, Huber-Thompson and Stevens, id. at 10. The United States Attorney represents all sixteen of these individuals under the umbrella term "Federal Employees." Dkt. No. 37 at 2 n.1.

Thirteen of the sixteen Federal Defendants contend that because the plaintiff has not effected service on them, they are not properly parties to the suit and must be dismissed. They assert that in August 2022 the plaintiff submitted to the court materials describing his efforts to serve the Federal Defendants. Dkt No. 37 at 11 (citing Dkt. No. 22). As to three of the Federal Defendants—Andrea LaBarge, Brian Amme, and Alfred Elser—the Federal Defendants observe that the plaintiff's materials "state that either the defendant was personally served at home or the complaint was given to a family member at the defendant's home," and say, "[p]resuming that to be true, service on these three defendants complied with Rule 4(e)(2), and therefore

34

would be treated as proper." Dkt. No. 37 at 11. They argue, however, that the plaintiff's materials do not show proper service on the remaining thirteen defendants—Marci Todd, Mitchell Leverette, Elaine Guenaga, Stephanie Carman, Randall Anderson, Dean Gettinger, Fred Holzel, Rebecca Wiler, Carolyn Helm, Timothy Howell, Trey Mitchell, Angela Stevens and Mary Huber-Thompson.[12] Id.

In his response to the motion to dismiss, the plaintiff did not address the Federal Defendants' service arguments. Dkt. No. 49. He did not attempt to meet his burden of showing that the court has personal jurisdiction over the eleven Federal Defendants, nor did he argue that good cause excuses his failure to effect service on those thirteen defendants. Id.

As the court has explained earlier in this order, "[a] defendant may enforce the service of process requirements through a pretrial motion to dismiss" under Fed. R. Civ. P. 12(b)(5). Cardenas, 646 F.3d at 1005 (citing Fed. R. Civ. P. 12(b)(5)). Again, under Rule 12(b)(5), "[t]he plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." Id. (citing Homer, 415 F.3d at 754). "If . . . the district court finds that the plaintiff has not met that burden and lacks good cause for not perfecting service, the district court must either dismiss the

---

[12] The caption of the plaintiff's complaint lists fourteen federal defendants; but as the court has explained, in the body of the complaint, the plaintiff makes allegations against two additional defendants who are not listed in the caption, for a total of sixteen federal defendants. Sparks-Sheskey arguably is a seventeenth, but she is not represented by the United States Attorney and is not included under the umbrella title "Federal Defendants."

[unserved defendants] or specify a time within which the plaintiff must serve the[m] . . . ." Id. (citing Fed. R. Civ. P. 4(m)). "As the text of the rule indicates, the decision of whether to dismiss or extend the period for service is inherently discretionary[.]" Id. (citing Ligas, 549 F.3d at 501).

The complaint appears to allege—and the Federal Defendants appear to agree—that the Federal Defendants are current or former federal employees. Federal Rule of Civil Procedure 4(i)(3) describes the process for effecting service on an officer or employee of the United States sued in an individual capacity "for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity)." For individuals who meet this description, "a party must serve the United States and also serve the officer or employee under Rule 4(e) [individual in the United States], (f) [individual in a foreign country], or (g) [minor or incompetent person]." The defendants in this case all appear to have been located in the United States, so Rule 4(i)(3) requires the plaintiff to have (a) served the United States and (b) served each of the Federal Defendants as required by Fed. R. Civ. P. 4(e).

Service on the United States requires the plaintiff to (A) "deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought," or to send a copy of the summons and complaint by registered or certified mail to the civil process clerk at the U.S. Attorney's Office; and (B) send a copy of the summons and complaint by certified or registered mail to the Attorney General of the United States in Washington,

36

D.C. Fed. R. Civ. P. 4(i)(1)(A) and (B). Neither the Federal Defendants nor the government have challenged the plaintiff's failure to serve the United States, so the court must assume that the defendants have waived this challenge (as they have the option to do).[13]

The Federal Defendants *do* argue that the plaintiff failed to serve thirteen of them as required by Fed. R. Civ. P. 4(e). The court already has explained that Rule 4(e) requires a plaintiff to serve an individual defendant by either following the service law of the state in which the district is located or service is made, or by delivering a copy of the summons and complaint to the individual personally, effective substitute service by leaving a copy at the individual's dwelling or abode with someone of suitable age and discretion who lives there or delivering a copy to an agent authorized by appointment or law to receive service of process. Fed. R. Civ. P. 4(e). The court also already has explained that under Wisconsin law, a plaintiff first must make reasonably diligent efforts to effect personal service on individual defendants. Wis. Stat. §801.11(1)(a). If, after the exercise of due diligence, a plaintiff is unable to effectuate service by

---

[13] The materials the plaintiff filed in August of 2022 include an undated and unsigned copy of a letter that appears to be from the plaintiff to three individuals at the U.S. Attorney's Office in the Eastern District of Wisconsin, copied to the Civil Process Clerk, advising those individuals that the letter constituted original or supplemental service of process. Dkt. No. 22 at 19-20 (duplicate at page 50-51). The materials also included copies of receipts from the U.S. Postal Service; next to certain charges, someone has typed "22-CV-002727," and then, respectively, "US Attorney General DC," "US Attorney ED Wis.," and "DOI-BLM Northeastern States Office c/o S Carmen." Id. at 21 (duplicate at page 52). The receipts are dated May 17, 2022. Id. 22-CV-2727 is the civil case number assigned to the case when it was filed in Milwaukee County Circuit Court. See Hobbs v. Sheskey, *et al.*, Case No. 2022CV2727 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov.

personally serving the individual defendant under Wis. Stat. § 801.11(1)(a), he may effect "substitute service" by leaving a copy of the summons at the defendant's usual place of abode in the presence of a competent member of the defendant's family who is at least fourteen years old and informed of the summons' contents; in the presence of a competent adult residing in the defendant's abode who is informed of the summons' contents; or "pursuant to the law for the substituted service of summons or like process upon defendants in actions brought in courts of general jurisdiction of the state in which service is made." Wis. Stat. §801.11(1)(b).

On August 10, 2022, the court received from the plaintiff sixty-one pages of materials. Dkt. No. 22. There was no cover letter, motion or brief associated with the materials, but they are the only materials in the record relating to service on the Federal Defendants. The materials reflect the following:

        a.    Andrea LaBarge

The plaintiff provided the court with a standard AO 440 Proof of Service form for Andrea LaBarge, indicating that the plaintiff received the summons for La Barge on April 27, 2022. Dkt. No. 22 at 2. The plaintiff did not mark the box for personal service, or substitute service, or service upon an authorized agent; he marked the "Other" box, and typed in the field next to it:

> Defendant was properly served by the following means & methods pursuant to Wis. Stat. Ann. §§ 801.11(1)(a)(b) and (d), 3, 4(a) and (b); 801.13 (1) and 801.14(2). Defendant was also properly served pursuant to FRCP R. 4, by USPS Priority Mail Tracking, the legal equivilent [sic] of Certifed [sic] or Registered Mail; and by USPS Certified Mail Return Reciept [sic].

38

Id. The plaintiff dated the form July 29, 2022 and signed it. Id. At the bottom of the form, where the form asks for additional information regarding attempted service, the plaintiff typed:

> Defendant was properly served by one or more of the following means & methods pursuant to Wis. Stat. Ann. §§ 801.11(1)(b) and (d), 3, 4(a) and (b); 801.13 (1) and (2) and 802.14(2). Defendant was also properly served pursuant to FRCP R. 4, by USPS Priority Mail Tracking, the legal equivalent of Certified or Registered Mail; and by USPS Certified Mail Return Receipt, as well as Defendants respondent superiors USDOI-BLM & US Atty General @ DC, and Counsel USAO ED Wis.

Id.

This form does not demonstrate that the plaintiff complied with the requirements of the federal and state service statutes. It asserts that the defendant was served by several methods, but does not provide dates or times, or say who effected service.

The plaintiff also included a document titled "Affidavit of Personal Service for Summons" for La Barge. Id. at 9-11. This document was prepared by Crystal Rivers of a company called Desert Eagle. Id. at 10. Rivers attested that she is not an adult Wisconsin resident and is not a party, and that she was hired by the plaintiff to serve the summons and complaint. Id. Rivers averred that on May 13, 2022 at 8:59 a.m., she personally served the summons and complaint on LaBarge at an address in Rockville, MD. Id. at 11, ¶5. The form is signed and is notarized. Id. at 11. *This* document meets the plaintiff's burden to show that LaBarge was personally served as required by Wis. Stat. §801.11(1)(a).

39

The document also shows that the plaintiff timely served LaBarge—the plaintiff filed the complaint in state court on April 27, 2022 and the affidavit shows that La Barge was personally served sixteen days later, and before the case was removed to federal court.

b.    Brian Amme

For Brian Amme, the plaintiff provided the court with a standard AO 440 Proof of Service form identical to the one he provided for La Barge. Dkt. No. 61 at 31. The only difference is that Amme's name appears at the top of the form in the field for the name of the person to whom the summons was directed. Id. As the court explained when discussing evidence of service on LaBarge, this form is not sufficient to prove that the plaintiff complied with state and federal service requirements in serving Amme.

Again, however, the plaintiff also provided an affidavit for personal service for summons relating to Amme. Id. at 37-39. The process server was non-party Dawn Marie Sheldon of LPS/Legal Process Service. Id. at 38. Sheldon attested that she personally served Amme at his home in Reno, Nevada on May 15, 2022 at 8:36 p.m. Id. at 39. Sheldon signed the affidavit and it is notarized. Id. The plaintiff also provided a copy of a declaration prepared by Amme (which defense counsel had filed on July 12, 2022, at Dkt. No. 13), in which he verified that he had been served with the summons and compliant at his home in Reno on May 15, 2022 by Sheldon. Id. at 35-36. These documents meet the plaintiff's burden to show that Amme was

40

personally served as required by Wis. Stat. §801.11(1)(a), and that he was timely served eighteen days after the plaintiff filed the complaint.

          c.     Alfred Elser

The plaintiff provided the same standard AO 440 Proof of Service form for Alfred Elser that he had provided for LaBarge and Amme, identical except for the name of the person to whom the summons was directed. Dkt. No. 61 at 3. As with the other two defendants, this form is not sufficient to meet the plaintiff's burden to prove that he effected proper service on Elser.

But the plaintiff filed an affidavit of substituted service for Elser. Id. at 12-14. Crystal Rivers of Desert Eagle again was the process server. Id. at 12. Rivers attested that on May 7, 2022 at 8:36, she had gone to Elser's home in Washington, D.C., and had spoken with Elser's daughter, who advised Rivers that Elser had resided at that addressed but had recently passed away. Id. at 13-14. Rivers attested that the daughter was at least fourteen years of age and residing in Elser's home, and that the daughter "voluntarily received the court documents on Alfred's behalf and/or on behalf of his estate." Id. at 14. Rivers signed the document and it is notarized. Id.

The Federal Defendants appear to agree that this document meets the plaintiff's burden to show that after reasonable efforts to personally serve Elser, the plaintiff effected substitute service under Wis. Stat. §801.11(1)(b). The service was timely, taking place ten days after the plaintiff filed the complaint in state court.

d.    Mitchell Leverette

The plaintiff provided the same AO 440 Proof of Service form for Mitchell Leverette that he provided for the previous three defendants, with only the name of the person to whom the summons was addressed changed. Dkt. No. 61 at 1. As with the others, this form is not sufficient to meet the plaintiff's burden to prove that he served Leverette as required by the state and federal statutes.

The plaintiff also filed a document titled "Declaration of Mitchell A. Leverette." Id. at 4-5. The document is unsigned. This document is identical to a declaration filed by defense counsel on July 12, 2022, with one exception—the document filed by defense counsel was signed by Leverette on July 6, 2022. Dkt. No. 15. Both documents indicate (and the executed version filed by defense counsel attests) that at the time of the declaration, Leverette was the director of the Bureau of Land Management's Eastern States Office in Falls Church, Virginia. Dkt. No. 61 at 4; Dkt. No. 15 at 1. Both indicate that on May 10, 2022, Leverette was teleworking from home. Dkt. No. 61 at 5; Dkt. No. 15 at 2. The documents indicate that while Leverette was at home, someone physically hand delivered copies of the summons and complaint to lobby security officer at the BLM office in Falls Church, that security asked a member of Leverette's staff to pick up the package, that the staff member did so and placed it on Leverette's desk and that Leverette found the package on his desk when he returned to the office May 11, 2022. Dkt. No. 61 at 5; Dkt. No. 15 at

42

2. Both documents indicate that [a]t no time did [Leverette] authorize the security officer to receive service of process on [his] behalf." <u>Id.</u>

The plaintiff provided an "Affidavit of Personal Service for Summons" for Leverette. Dkt. No. 61 at 6-8. Crystal Rivers again was the process server. <u>Id.</u> at 7. Rivers attested that on May 10, 2022 at 3:11 p.m., she went to the office in Falls Church, Virginia and met an "Officer E. Ngoumou," whom she says "identified himself as an agent authorized by appointment or by law to accept service of the summons on behalf of the Defendant." <u>Id.</u> at 8. Rivers described Ngoumou and asserted that he "accepted the process of service, notice of summons and copy of said complaint on behalf of the Defendant." <u>Id.</u>

It is the plaintiff's burden to prove by a preponderance of the evidence that he effected proper service on Leverette. <u>See</u> <u>Peralta v. El Tiburon, Inc.</u>, 252 F. Supp. 3d 658, 661 (N.D. Ill. 2017). The Seventh Circuit has consistently held that "[a] process server's affidavit identifying the recipient and when and where service occurred is 'prima facie evidence of valid service which can be overcome only by strong and convincing evidence.'" <u>Durukan America, LLC v. Rain Trading, Inc.</u>, 787 F.3d 1161, 1163 (7th Cir. 2015) (quoting <u>O'Brien v. R.J. O'Brien & Assocs. Inc.</u>, 998 F.2d 1394, 1398 (7th Cir. 1993)). But "[t]he affidavit of the party asserting personal jurisdiction is presumed true only until it is disputed." <u>Id.</u> "Once disputed, the party asserting personal jurisdiction . . . must prove what it has alleged." <u>Id.</u> at 1163-64 (citations omitted). Leverette has disputed that he was appropriately served. He has filed with the court a sworn declaration attesting that he did not authorize anyone to accept service

of process on his behalf. Dkt. No. 15. The Federal Defendants argue in their brief that the process server left the service package "with a security employee at a federal office building." Dkt. No. 37 at 11.

The question is whether, given Leverette's declaration—made under penalty of perjury—that he did not authorize the security officer to receive service of process on his behalf, the plaintiff has proven that service was properly effected under Fed. R. Civ. P. 4(e)(2)(C), which requires service by delivery to "an agent authorized by appointment or by law to receive service of process."[14] The court strongly suspects that Leverette did not appoint a security guard at a federal building to accept process of service on his behalf. But it is the plaintiff's burden to prove that Leverette did so. The court will give the plaintiff the opportunity to present any other evidence he may have to support his claim that he served the summons on complaint on someone appointed by Leverette to accept service.

e.    Marci Todd

The plaintiff filed the same AO 440 Proof of Service form for Marci Todd that he filed for the previous defendants, with Todd's name in the space for the person to whom the summons was addressed. Dkt. No. 61 at 33. Again, this form is not sufficient to meet the plaintiff's burden to prove that he served Todd as required by law.

---

[14] The court could not determine from a brief search of Virginia law whether Virginia allows service on an individual by sending a copy of the summons and complaint to an agent appointed to receive service of process. See §8.01-296, Manner of serving process upon natural persons, Code of Virginia.

44

The plaintiff filed an "Affidavit of Substituted Service for Summons" for Todd. Id. at 40-42. The process service was Taylor Jae Diem of LPS/Legal Process Service. Id. at 41. Diem attested that on May 17, 2022, Diem tried to serve Todd at an address on Financial Boulevard in Reno, Nevada, but was told "by a representative of the US Dept. of the Interior Bureau of Land Management" that Todd no longer worked there. Id. Diem attested that when Diem contacted the plaintiff and advised the plaintiff of what had happened, the plaintiff responded that "Defendant was attempting to avoid process of service and Defendant has worked at that location since at least 2017 and defendant's name is listed on business address website, as an officer of that business location . . . . Plaintiff requested we continue our attempts at said location . . . ." Id. at 42. Diem attested that upon returning to the address on Financial Boulevard on May 19, 2022 at 1:27 p.m., an administrative assistant named Chet Beecher accepted service of the summons "on behalf of the Defendant." Id. Diem stated that Beecher was a "competent adult over the age of eighteen (18)," who told Diem that Todd's usual place of business was at that location. Id.

Unlike the affidavit of service the plaintiff filed for Leverette, this affidavit does not establish valid service. Under federal law, the plaintiff may leave a copy of the summons and complaint "at the individual's *dwelling or usual place of abode* with someone of suitable age and discretion who resides there," or by delivering "a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(B) and (C). The process

45

server's affidavit does not establish either. It does not aver that the summons and complaint were left at Todd's *dwelling or usual place of abode*—it attests that they were left at her business address. Nor does the affidavit attest that Chet Beecher was appointed or authorized by law to accept service on Todd's behalf. The Nevada service statute, Nev. R. Civ. P. 4.2, tracks the federal statute—it allows service by leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with a person of suitable age and discretion who currently resides therein and is not an adverse party to the individual being served," or "by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." Again, according to the process server's affidavit, neither of these things happened with respect to Todd.

The plaintiff has not met his burden to show that he properly served Marci Todd.

### f. Elaine Guenaga

The plaintiff's proof of service for Elaine Guenaga suffers from the same deficiencies as the proof of service for Todd. The plaintiff again filed the same AO 440 Proof of Service form for Guenaga, with her name in the field for the addressee of the summons. Dkt. No. 61 at 32. The plaintiff filed an "Affidavit of Substituted Service for Summons" for Guenaga, dkt. no. 61 at 43-45; Taylor Jae Diem again was the process server, and it appears that Diem tried to serve Guenaga at the office in Reno at the same time service was attempted on Todd—May 17, 2022. Id. at 44. Diem was told that Guenaga didn't work there,

46

then went back on May 19 and gave the summons and complaint for Guegaga to administrative assistant Chet Beecher. Id. at 44-45.

For the same reasons that his documents did not meet his burden to prove effective service on Todd, the plaintiff's documents do not meet his burden to prove that he properly effectuated service on Guenaga.

g.    Stephanie Carman

The plaintiff's materials contain a single document[15] related to Stephanie Carman. The plaintiff provided an unsigned, undated document with the heading "Notice of Process of Service Original and/or Supplemental in the Following Causes Before the W.D. Tex.: 22-CV-16, 22-CV-26; & E.D. Wis.: 22-CV-680, 22-CV-0721." Dkt. No. 61 at 46. The document is written in the form of a letter, addressed to:

> The United States Department of the Interior
> Bureau of Land Management, The Hon Deb
> Haaland, in her official capacity as Secretary
> of the Interior
> c/o Stephanie Carman, in her official capacity
> as District Manager, Northeastern
> States District Office
> 626 E. Wisconsin Ave., Suite 200
> Milwaukee, WI 53202-4617
> Email: scarman@blm.gov
> Phone: 414-297-4450
> Fax: 414-297-4409
> Email: scarman@blm.gov

Id.

---

[15] The plaintiff provided this same document twice in his materials: Dkt. No. 61 at 15-18 and Dkt. No. 61 at 46-49.

The salutation reads, "Ms. Carman," and the letter advises the addressee that her "agency is hereby served" in cases 22-CV-721 (E.D. Wis.), 22-CV-0680 (E.D. Wis.) and 22-CV-0026 (W.D. Tex.). Id. at 15-18.

It is possible that this letter constitutes the plaintiff's efforts to comply with Fed. R. Civ. P. 4(i)(1)(C), which requires that when serving the *United States*, the plaintiff must send a copy of the summons and complaint to any nonparty agency or officer of the United States. But it does not suffice to effect service on *Carman* as an individual. The plaintiff's materials contain no evidence that he personally served Carman, or that he effected substitute service on Carman, or that he served someone appointed to accept service on Carman's behalf. The plaintiff has not met his burden to show that he effected service on Carman under federal or Wisconsin law.

h.    Mary Huber-Thompson

The plaintiff's materials contain a single document related to Mary Huber-Thompson—the same AO 440 Proof of Service form he filed regarding several other defendants, modified only to put Huber-Thompson's name in the field provided for identifying the person to whom the summons was addressed. Dkt. No. 22 at 34. This form is no more sufficient to meet the plaintiff's burden to prove service on Huber-Thompson than it was to prove service on the other defendants. The plaintiff did not file an affidavit of service or any other document showing any attempts to serve Huber-Thompson. The plaintiff has not met his burden to prove that he properly served Huber-Thompson.

48

<blockquote>
i.    Fred Holzel, Rebecca Wiler, Carolyn Helm, Timothy Howell, Trey Mitchell, Angela Stevens, Randall Naderson and Dean Gettinger
</blockquote>

The plaintiff's service materials make no mention of the remaining eight Federal Defendants. He provided no AO 440 Proof of Service forms, no affidavits of service—nothing. The plaintiff has not met his burden to prove that he effected service on these defendants.

j.    Conclusion

By properly and timely serving LaBarge, Amme and Elser, the plaintiff has demonstrated that he is aware of how to effect proper and timely service. There is a factual question regarding whether he properly served Leverette. As to the remaining twelve Federal Defendants, the plaintiff has not properly served them. He has not responded to the Federal Defendants' arguments that he did not meet his burden to prove effective service. He has not shown good cause for failing to timely and properly effect service. And the plaintiff has been aware since the Federal Defendants filed their motion to dismiss (since late last fall) that the Federal Defendants assert that he did not effectuate proper service. The court will not set another date for service of process. It will dismiss those defendants whom the plaintiff has not properly served, but will give the plaintiff the opportunity to present additional evidence as to Leverette.

2.    *Failure to State a Claim and Leave to Amend*

Both the Federal Defendants and the government argue that the court should dismiss the claims against them under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Dkt. Nos. 37 at 6-10; 39 at 7-16. The

49

Federal Defendants contend that the plaintiff's first six claims—constitutional claims arising out of his employment relationship with the United States government—are preempted by the Civil Service Reform Act and Title VII of the Civil Rights Act. Dkt. No. 37 at 6-10. In its motion to dismiss, the government argues that federal employment law preempts any claims arising out of the plaintiff's employment with the United States government, that the plaintiff's tort claims are preempted by the Federal Tort Claims Act and that the plaintiff's claims against the government arising under Wisconsin criminal statutes are barred by the doctrine of sovereign immunity. Dkt. No. 39 at 7-16.

In his brief in opposition to the defendants' motions to dismiss, the plaintiff does not respond to these arguments. Instead, he argues generally that dismissing the complaint at this stage would be improper. Dkt. No. 49 at 2-24. He asserts that, "[n]o matter the deficiencies in the Plaintiffs Original Complaint, this bar must construe Plaintiff's pleadings as 'plausible' and above and level of speculation, 'so as to do justice.'" Dkt. No. 49 at 3. He cites Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that to survive a motion to dismiss his complaint need only "includ[e] factual allegations sufficient to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" and he asserts that he "has significantly exceeded this normative R[ule] 8(a) burden." Id. at 4; see also id. at 6-19 (raising various plausible pleading and liberal construction arguments). He also asks the court to give him leave to amend his complaint, pointing out that "pursuant to FRCP Rule

50

15(a)(2), 'The court should freely give leave when justice so requires.'" Id. at 2-3.

The plaintiff is proceeding without counsel, and he has not paid the filing fee. Under 28 U.S.C. §1915(e)(2)(B), the court is required to "screen" complaints of self-represented persons who are proceeding without prepaying the filing fee, to determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. Because the Federal Defendants removed the case to this court from state court, they paid the filing fee and almost immediately sought leave to respond, so the court did not screen the complaint. Had it done so, the court likely would have concluded that, regardless of whether the complaint states a claim upon which a federal court may grant relief, the complaint fails to comply with Fed. R. Civ. P. 8(b).

The court has recounted that the complaint was over 170 pages long. Fed. R. Civ. P. 8(b) directs that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Seventh Circuit has explained that that Rule 8 requires parties "to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). "Although length alone is generally insufficient to justify rejecting a complaint, unintelligibility is certainly a legitimate reason for doing so." Standard v. Nygren, 658 F.3d 792, 797-98 (7th Cir. 2011). "Again, the issue is notice; where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that

51

constitute the alleged wrongful conduct, dismissal is an appropriate remedy." Id. at 798. This is true even though, as the plaintiff insists in his response, a self-represented litigant's filings must be "liberally construed," and are held to a less stringent standard than documents drafted by lawyers. See, _e.g._, Erickson v. Pardus, 551 U.S. 89, 94 (2007).

At the same time, the Seventh Circuit has held that rather than dismissing a complaint because it is lengthy or unintelligible, a judge should "bypass the dross and get on with the case." Garst, 328 F.3d at 378. And as the plaintiff correctly observes, Fed. R. Civ. P. 15(a)(2) encourages courts to "freely give leave [to amend] when justice so requires."

Although the Federal Defendants and the government assert that the complaint is 174 pages long, repetitious and largely unintelligible, their motions and briefs show that they tried to make sense of the plaintiff's allegations. Despite their efforts, their respective arguments for dismissing the claims largely involve guesswork. See, _e.g._, Dkt. No. 37 at 8 (arguing that, "to the extent [the plaintiff] is claiming he suffered an adverse decision in appointment, promotion, discipline, or the like, any suit must run through the CSRA"); Dkt. No. 39 at 8 (same); id. at 9 ("If [the plaintiff] believes he is the victim of discrimination, then either the CSRA or Title VII both provide the source of his substantive claims and describe the appropriate procedure to vindicate his rights."); id. at 10 ("[T]o the extent these claims seek monetary damages, they should be treated as tort claims and thus dismissed for failure to state a claim."). Despite the defendants' attempts to pin down the plaintiff's

claims, the length of the complaint and the general nature of the plaintiff's claims force both the defendants and the court to guess at the nature of the claims, and at which claims involve which defendants.

While the defendants' motions to dismiss suggest that giving the plaintiff leave to amend the complaint would prove futile, neither the Federal Defendants nor the government explicitly contend that in their respective motions to dismiss, dkt. nos. 37, 39, and in their replies, neither defendant addressed the plaintiff's request for leave to amend, dkt. nos. 51, 52. Rather than dismiss the plaintiff's complaint for failing to abide by Rule 8(a), the court will grant the plaintiff's request for leave to amend his complaint to comply with Rule 8(a). Because the court is allowing the plaintiff to file an amended complaint, the court will deny as moot the government's motion to dismiss, dkt. no. 38, and will deny as moot the Federal Defendants' motion to dismiss to the extent that it asks the court to dismiss the complaint for failure to state a claim, dkt. no. 36.

The court makes several observations. The plaintiff argued in his response to the motions to dismiss that he has been put through so many years of pain and suffering by the defendants that a 174-page complaint was necessary. Much of the complaint, however, consists of recitations of federal or state law, which are not required to state a claim. The complaint cites various cases; complaints are not required to include case citations. The complaint contains legal arguments, but a complaint is not a brief. It does not need legal arguments.

53

A complaint needs only to state the "who, what, when, where and how" of a plaintiff's claims. As to each defendant against whom the court allows him to proceed, the plaintiff should explain what that defendant did to harm him, when the defendant did it, where the events occurred and how the defendant harmed him. Bare assertions that a group of people conspired against the plaintiff are not sufficient. See Twombley, 550 U.S. at 556-57.

Several of the arguments the Federal Defendants and the government have raised in their motions to dismiss are affirmative defenses. On the one hand, "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016) (citing Chi. Bldg. Design v. Mongolian House, Inc., 770 F.3d 610, 613 (7th Cir. 2014)). That said, the fact that the court is allowing the plaintiff to amend his complaint does not prevent the defendants from raising these same affirmative defenses in a motion to dismiss the amended complaint. The court's ruling does not bar the defendants from making their Civil Service Reform Act preemption, Federal Tort Claims Act exhaustion and sovereign immunity arguments if those arguments are warranted by the claims in the amended complaint.

The defendants correctly point out that a private individual cannot sue for violations of *criminal* statutes. See Dkt. No. 39 at 12-13 (government's opposition brief). Only the government—the United States Attorney in the case of federal criminal statutes, and county prosecutors in the case of violations of

state criminal laws—may prosecute criminal statutes, unless the statute itself provides private citizens with a private right of action.

The court will provide the plaintiff with an amended complaint form. The plaintiff must use this form to prepare his amended complaint. He must put the case number for this case (22-cv-680) in the field for the case number. He may name as defendants only those individuals whom the court has not dismissed in this order. He may use the lines on pages 2-3 to describe the facts that give rise to his claims as to each defendant. If he needs more space, the plaintiff may use no more than five, *double-spaced* additional pages to lay out the facts of his claims against each defendant. The amended complaint must be complete in itself; it may not refer the reader back to the original complaint. This is because "[i]t is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void." Flannery v. Recording Indus. Ass'n of America, 354 F.3d 632, 628 n.1 (7th Cir. 2004).

The plaintiff must send his amended complaint in time for the court to *receive* any amended complaint by the end of the day on May 17, 2024. If the court does not receive from the plaintiff an amended complaint (or a motion for an extension of time by which to file the amended complaint) by the end of the day on May 17, 2024, the court may dismiss the case for failure to comply with the court's order.

The court also will require the plaintiff to provide any additional proof that he effected proper service on defendant Mitchell Leverette by the end of the day on April 19, 2024. Again, the plaintiff must provide any proof he has that

55

the security officer at the BLM office in Falls Church was appointed or authorized by Leverette or by law to accept service of process on Leverette's behalf in time for the court to *receive* it by the end of the day on April 19, 2024.

## IV. Conclusion

The court **GRANTS** defendant Rusten Sheskey's motion to dismiss Dkt. No. 28. The court **ORDERS** that defendant Sheskey is **DISMISSED WITHOUT PREJUDICE**. Dkt. No. 28.

The court **DENIES** the plaintiff's motion for entry of default. Dkt. No. 59.

The court **DENIES** the plaintiff's motion for recusal and to strike pleadings. Dkt. No. 64.

The court **GRANTS** the Federal Defendant's motion to dismiss to the extent that it asks the court to dismiss the unserved defendants. Dkt. No. 36. The court **ORDERS** that defendants Marci Todd, Elaine Guenaga, Stephanie Carman, Randall Anderson, Dean Gettinger, Fred Holzel, Rebecca Wiler, Carolyn Helm, Timothy Howell, Trey Mitchell, Angela Stevens and Mary Huber-Thompson are **DISMISSED WITHOUT PREJUDICE**.

The court **DENIES AS MOOT** the Federal Defendant's motion to dismiss to the extent that it asks the court to dismiss the complaint for failing to state a claim on which relief can be granted. Dkt. No. 36.

The court **DENIES AS MOOT** the government's motion to dismiss. Dkt. No. 38.

The court **ORDERS** that by the end of the day on **May 17, 2024**, the plaintiff must file an amended complaint that complies with this order. If the

56

court does not receive from the plaintiff an amended complaint (or a motion for an extension of time by which to file the amended complaint) by the end of the day on May 17, 2024, the court may dismiss the case for failure to comply with the court's order.

The court **ORDERS** that if the plaintiff wishes to proceed against Mitchell Leverette, then by the end of the day on **April 19, 2024**, he must file with the court evidence that the security officer at the BLM office in Falls Church was appointed or authorized by Leverette to accept service of process on Leverette's behalf. The plaintiff must file such evidence in time for the court to *receive* it by the end of the day on April 19, 2024. If the plaintiff does not file such evidence by the end of the day on April 19, 2024, the court will dismiss defendant Leverette.

Dated in Milwaukee, Wisconsin this 15th day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

57